843 F.2d 706
 Barbara Purse MOORE, Appellant,
v.
C. Edward GRAYBEAL, Sr., M.D.; Mrs. C. Edward Graybeal,
a/k/a Ruth Graybeal; Milford Memorial Hospital,
Bank of Delaware, and Wilson O. McCabe,
Register of Wills.
 No. 87-3694.
 United States Court of Appeals,
Third Circuit.
 Submitted Pursuant to Third Circuit
Rule 12(6), March 10, 1988.
Decided March 31, 1988.
Rehearing and Rehearing In Banc Denied April 22, 1988.
 
 Donald W. Booker, Wilmington, Del., for appellant.
 Walter L. Pepperman, II, Morris, Nichols, Arsht and Tunnell, Wilmington, Del., for appellees C. Edward Graybeal, Sr., Ruth Graybeal, Milford Memorial Hosp., Bank of Delaware.
 Robert V. Witsil, Jr., Legal Counsel to Sussex County, Georgetown, Del., for appellee Wilson O. McCabe, Register of Wills.
 Before WEIS, GREENBERG and ALDISERT, Circuit Judges.OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 This matter is before this court on appeal from an order dismissing the complaint of appellant Barbara Purse Moore (Moore) for lack of jurisdiction in this action related to the distribution of a decedent's estate. The material facts are as follows. Jean L. Purse (Purse), a retired school teacher, was married to Thomas Scott Purse who died December 12, 1955 devising a substantial estate to her. Thomas had previously been married and Moore is a granddaughter from that marriage and is thus related to Purse as a step granddaughter. Purse's closest relative and possible heir at law is a distant cousin who is thought to reside in California.
 
 
 2
 On October 18, 1979 Purse, a Delaware resident, executed a will, allegedly prepared by the Bank of Delaware (bank), naming Moore and her children as her principal beneficiaries. On July 24, 1984 Purse executed another will, also allegedly prepared by the bank, revoking the prior will and devising the bulk of her estate to Dr. C. Edward Graybeal and Milford Memorial Hospital.[1] The 1979 and 1984 wills also made certain small bequests not germane to this appeal. In addition to devising the substantial portion of her estate by the 1984 will, Purse, by written memoranda directed that certain of her tangible personal property should be distributed to various persons including Dr. Graybeal and his wife, Ruth Graybeal. Purse died on January 4, 1986 at the Milford Memorial Hospital (hospital) and her will was admitted to probate in Sussex County on January 16, 1986.
 
 
 3
 On June 5, 1986, Moore, a citizen of Colorado, filed this diversity action against the Graybeals, the hospital, the bank and the Sussex County Register of Wills. She alleged that Purse died from cancer on January 4, 1986 at the hospital when she was 83 years old and that the bank had been appointed executor under the July 24, 1984 will on January 16, 1986. Moore asserted that Dr. Graybeal had treated Purse for approximately ten years during which she was a patient on several occasions at the hospital. Moore set forth her relationship to Purse through Purse's marriage and indicated that Thomas Scott Purse was the source of Purse's assets. Moore further alleged that "[p]rior to the Will of 1984 of Jean L. Purse" Moore had been the beneficiary by a trust provision of a majority of Purse's property. She indicated she had a close relationship with Purse. She asserted that Purse was incompetent when the 1984 will was executed, prior to her death there had been substantial transfers of Purse's assets, the bank had a duty to reclaim and marshal these assets, and Dr. Graybeal and the hospital used undue influence to cause Purse to be alienated from her and to become Purse's beneficiaries. Moore asked that the July 24, 1984 will "be set aside," Graybeal and the hospital "be declared to be improper beneficiaries" of Purse, and the "Will existing before 1984" be reinstated. She also asked that the distribution be made under Purse's prior will.
 
 
 4
 On July 3, 1986, the Graybeals, the hospital and the bank filed a motion to dismiss. On August 1, 1986, Moore filed a motion for leave to amend the complaint. Her proposed amended complaint added her children as plaintiffs and, though no relief was sought against them, named the specific legatees under the July 24, 1984 will as defendants. The proposed amended complaint repeated the allegations of the original complaint. In general Moore alleged that Purse was incompetent when the will was executed, the bank had been Purse's advisor and was aware of her condition but nevertheless prepared her will, Moore and her children had been deprived of their rightful inheritance which prior to the 1984 will had been left to them in trust, and Dr. Graybeal and the hospital wrongfully used their positions of trust to influence Purse unduly and completely control her with drugs, which had the effect of alienating Purse from Moore so that Moore and her children were deprived of their rightful inheritances. The proposed amended complaint emphasized the duty that Dr. Graybeal and the hospital owed to Purse and had allegedly breached. In the proposed amended complaint Moore asked that she be awarded damages of $975,000, the approximate value of Purse's estate, the will of Purse of July 24, 1984 be set aside, the Graybeals and the hospital be declared improper beneficiaries, the prior will be reinstated, or alternatively, that the distribution be made as provided in the earlier will. The proposed amended complaint also asked for punitive damages.
 
 
 5
 On October 2, 1987, the district judge filed an opinion on defendants' motion to dismiss. Moore v. Graybeal, 670 F.Supp. 130 (D.Del.1987). Though he did not rule on Moore's motion to amend he said that he would test defendants' motion against the proposed amended complaint. Id. at 131. The judge pointed out that Moore had eschewed the Delaware statutory scheme for review of a will and thus the case addressed the power of a federal court in a diversity action "to entertain jurisdiction over cases concerning the probate or annulment of the probate of a will." Ibid. He pointed out that it was well-settled a federal court will not assume jurisdiction in an action to avoid a will or set aside its probate and that a court of equity is without power to set aside the probate of a will unless expressly authorized by statute to do so. Therefore a federal court would have no probate powers unless its state counterpart had that power. Id. at 132. But a federal court may entertain a diversity case that the state has authorized its courts to hear as an action inter partes independent of the original probate proceeding and apart from the ancillary exercise of probate jurisdiction. Ibid.
 
 
 6
 The judge then analyzed Delaware law to ascertain if this action could have been brought as an inter partes case in the state courts. He pointed out that in Delaware a will is filed with the register of wills in the county where the decedent last resided and it is then proved before the register. However, a person interested may contest the will by filing a caveat against its probate before it is proved or by filing a petition for review within six months after the will has been proved before the register or, if self-proved, within six months of its delivery to the register. Id. at 133; Del.Code Ann. tit. 12, Sec. 1309(a) (1987). The judge concluded that Delaware provides for "a will contest only before the Court of Chancery which, through its Clerk, the Register of Wills, has either admitted the will to probate or has rejected the application for probate." 670 F.Supp. at 133. He further held that these proceedings are an essential part of the probate proceedings and do not create an independent cause of action and thus Delaware confines will contests to the original proceedings.[2]
 
 
 7
 The judge then discussed Delaware case law which buttressed his conclusion. Id. at 133-34. In this regard he pointed out that Chancellor Seitz, now Judge Seitz of this court, held in Anthony v. Harris, 34 Del.Ch. 166, 100 A.2d 229 (1953), that in an action seeking to compel a defendant to purchase real estate, intervenors could not resist specific performance on the ground the vendors' title was derived from an invalid will, as a challenge to a will is exclusively confined to the probate proceedings so that the court would "not permit what amounts to a collateral attack upon the probate of a will." Id. at 169, 100 A.2d at 232. The judge concluded that Moore necessarily was attacking the probate of the 1984 will and thus as Delaware did not authorize an inter partes action the district court did not have jurisdiction. 670 F.Supp. at 134. Consequently, on October 2, 1987 the judge signed an order dismissing this action. This appeal followed.
 
 
 8
 Moore contends that the district judge should have granted her motion to amend and decided the case with reference to the proposed amended complaint rather than the original complaint. She asserts that this is an in personam action against Dr. Graybeal and the hospital "for their tortious conduct in taking advantage of an aged and infirm person and diverting the legal title of property to themselves" rather than "an in rem proceeding attacking the probate of the Will." Thus the result would be "a money judgment" with any other relief being only "ancillary." Therefore the district court had jurisdiction as federal courts may entertain actions by creditors, legatees and heirs against an estate to establish their claims. Thus, in Moore's view, the district judge's opinion which treated the action as an attack on the probate of the 1984 will "is not in point."
 
 
 9
 Moore further emphasizes that Dr. Graybeal and the hospital owed a duty to Purse not to take advantage of her. She also argues that Delaware recognizes the tort of intentional interference with an inheritance which she can demonstrate that defendants committed so she is entitled to a jury trial on the issue. She contends that she has no remedy under Delaware probate law as invalidation of the 1984 will could only result in intestacy and, as she is not related to Purse by blood, she could not inherit from her. Thus invalidation of the will would benefit only the cousin in California.
 
 
 10
 We, like the district court, are obliged to consider a federal court's jurisdiction in probate matters. Clearly, it is fundamental that federal courts have no jurisdiction to probate a will or administer an estate. Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946). Thus, they do not ordinarily have jurisdiction to set aside a will or the probate thereof. Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 256, 62 L.Ed. 664 (1918). The application of these principles is demonstrated by Kausch v. First Wichita Nat'l Bank, 470 F.2d 1068 (5th Cir.1972), in which the Court of Appeals affirmed an order of the district court dismissing for lack of jurisdiction an action seeking to set aside a will on the basis of incompetency of the testatrix or undue influence. See also Turton v. Turton, 644 F.2d 344 (5th Cir.1981).
 
 
 11
 Assuming, however, that there is diversity of citizenship and the requisite amount in controversy, a federal court has jurisdiction to entertain a suit in favor of a creditor, legatee, heir or other claimant against a decedent's estate to establish a claim so long as the court does not interfere with the probate proceedings or assume general jurisdiction of the probate proceedings or control of the property in the custody of the state court. Markham v. Allen, 326 U.S. at 494, 66 S.Ct. at 298. Thus, in Giardina v. Fontana, 733 F.2d 1047 (2d Cir.1984), the Court of Appeals held that the district court had jurisdiction to entertain an action by an assignor of an interest in an estate to set aside the assignment and grant related relief on the grounds that it had been obtained from her by undue influence and fraud. The court held that invalidation of the assignment would not interfere with the state court probate proceedings or the administration of the estate and was thus not within the probate exception to diversity jurisdiction. Id. at 1050.
 
 
 12
 Notwithstanding these jurisdictional limitations, if a state authorizes interested parties to bring an inter partes action to annul a will or to set aside its probate independent of the probate proceedings and not incidental or ancillary thereto then, assuming there is diversity of citizenship and the requisite amount in controversy, a federal court has jurisdiction over the case. Sutton v. English, 246 U.S. at 205, 38 S.Ct. at 256; Farrell v. O'Brien, 199 U.S. 89, 110-11, 25 S.Ct. 727, 734, 50 L.Ed. 101 (1905). The jurisdiction to hear an inter partes matter thus expands the power of a federal court to hear matters related to but independent of probate proceedings not barred by the probate exception to diversity jurisdiction. See Rice v. Rice Foundation, 610 F.2d 471, 475-76 (7th Cir.1979). This jurisdiction to hear inter partes actions, unlike the jurisdiction over matters not interfering with the probate proceedings or the state control of the estate, requires reference to state practice to determine the scope of federal jurisdiction.
 
 
 13
 In considering Moore's action against the foregoing principles, though we continue as a matter of convenience to refer to Moore as the sole plaintiff, we treat the proposed amended complaint as if it had been filed as did the district judge. Thus his alleged error in not granting the motion to amend is moot. Preliminarily on the merits we note our agreement with the district judge, for the reasons he set forth, that the Delaware statutory procedures by which a person interested may contest the probate of a will before the Court of Chancery are exclusive. Thus we adopt his conclusion that Delaware does not authorize an inter partes action for the direct purpose of annulling a will or setting aside its probate.
 
 
 14
 Further, we are satisfied that jurisdiction cannot be sustained on the theory that this is an action by a legatee which does not interfere with the probate proceedings. Regardless of how Moore characterizes her claim, she is seeking in substance to invalidate the will on the basis of undue influence and lack of capacity, as she contends she should recover what she expected to receive under the 1979 will. See Krueger v. Farmers and Merchants Bank, 721 F.2d 640 (8th Cir.1983); Blakeney v. Blakeney, 664 F.2d 433 (5th Cir.1981). We are not impressed with the concept that granting her relief would not interfere with the probate proceedings if done by an award of damages rather than by an order to the executor directing distribution of the estate. Either way the substance is the same. Indeed, though it is not critical to our result, Moore has acknowledged the potential impact of her action on the probate proceedings by joining the register of wills as a defendant.
 
 
 15
 We therefore consider whether the case can be treated as an inter partes action not in the nature of a direct attack on the probate and thus be within the district court's jurisdiction. Moore contends that it can be so treated as it is nothing more than a tort action for intentional interference with her prospective inheritance. We do not doubt that if Delaware permitted a beneficiary under a prior will to bring an action independent of the probate proceedings for damages against persons who caused a testatrix, whether or not competent, by undue influence to execute a later will in their favor, and thereby revoke the prior will, the district court would have jurisdiction in this case. Further, we are aware that there is authority that an action will lie for tortious interference with an inheritance. See Restatement (Second) of Torts Sec. 774B (1979). Here, however, the proposed action is so inconsistent with the Delaware statutory plan for exclusive review of probate proceedings that allowing it would subvert the probate law, for in substance a judgment against the hospital and Dr. Graybeal for a sum equal to the amount of Moore's lost legacy would effectively revoke the bequests to them. Indeed it would do more for, as Moore admits, she is not an heir at law of Purse and thus her only claim to Purse's estate is under the 1979 will. But inasmuch as that will has never been probated, for Moore to recover she would be required to establish her entitlement under it to prove her losses and thereby in practical terms obtain its probate. Her proposed action would thus doubly subvert Delaware law.[3]
 
 
 16
 In reaching this conclusion we are not to be understood as implying that we believe that Delaware would, in no circumstances, allow an action for tortious interference with an inheritance.[4] It is possible that if the tortfeasor himself was not a beneficiary of the will of the decedent or in privity with the beneficiary, such an action would be possible. For example, a tortfeasor might by fraud have induced a testator to revoke a will, following which the testator without interference of the tortfeasor made a valid will leaving his estate to another person. In that event, as there would be no basis to challenge the second will, the wronged party could have no remedy under statutory review procedures. Therefore, unless an action in tort was available he would have no remedy. Further, it is conceivable that a tortfeasor who concealed the existence of a prior will so as to preclude an injured beneficiary from bringing what would otherwise be an adequate and timely statutory review proceeding could be liable for tortious interference with an inheritance. But where, as here, there was adequate relief available in a statutory proceeding, a tortious interference claim may not be pursued. See Robinson v. First State Bank, 97 Ill.2d 174, 185, 73 Ill.Dec. 428, 434, 454 N.E.2d 288, 294 (1983); DeWitt v. Duce, 408 So.2d 216, 218 (Fla.1981). We recognize, of course, that at this time a statutory proceeding may be time barred. See Del.Code Ann. tit. 12, Sec. 1309(a) (1987).[5] That circumstance, however, has no bearing on our result. A party with an exclusive statutory remedy cannot be permitted to allow her remedy to be lost and then proceed with a tort action which would be otherwise unavailable.
 
 
 17
 In her opening brief in this court Moore argued that she had no remedy under Delaware law, for setting aside the 1984 will would necessarily result in intestacy with the estate then passing to Purse's cousin in California. In their brief Graybeal, the hospital and the bank disputed this, relying on Conner v. Brown, 39 Del. 529, 552, 3 A.2d 64, 74 (Super.Ct.1938), in which the court indicated: "A will adjudged to be void on the ground of undue influence, which is a species of fraud, can have no effect as a revocation of a prior will...." Thus, in their view Moore had standing to invoke the statutory review procedure available to "any person interested" under Del.Code Ann. tit. 12, Sec. 1309(a) (1987) to seek invalidation of the 1984 will. In her reply brief Moore contended that Conner v. Brown is not applicable for the following reason:
 
 
 18
 In that case [Conner v. Brown ], the prior Will appears to have been filed for probate along with a more recent Will. The decision referred to by Defendants is that if the more recent Will was denied probate the previous Will would stand and be admitted to probate. That is not the fact in the immediate case as no prior Will is available due to the actions of Defendant, Bank of Delaware, and any elimination of the 1984 Will would result in intestacy which would deny Plaintiffs any right of action of any nature whatsoever by the Register of Wills or the Court of Chancery and therefore would not provide a remedy to Plaintiffs. 12 Del.C., Sec. 501, 502.
 
 
 19
 Clearly, Moore did have a right to proceed under Del.Code Ann. tit. 12, Sec. 1309(a) (1987). Here, the revocation of the 1979 will and the execution of the 1984 will were related events. Obviously, if there was undue influence exerted or if Purse was incompetent when the 1984 will was executed, the allegedly wrongful action of the bank in destroying the earlier will was ineffective. Thus Moore had standing in this case to seek review under the Delaware statutes. See Abbott v. Foy, 662 S.W.2d 629 (Tex.Ct.App.1983).[6]
 
 
 20
 We further observe that it is beyond dispute that Moore had ample opportunity to bring this action in the Delaware courts. Purse died on January 4, 1986 and her will was admitted to probate on January 16, 1986. Moore's reply brief states that she obtained a copy of the 1979 will on July 1, 1986.[7] At that time she was represented by counsel and this action had been filed. Consequently, she had an opportunity to avail herself of seeking a review of the probate under Del.Code Ann. tit. 12, Sec. 1309(a) (1987), as that statute provides for a six months statute of limitations running from the time of the proof of the will.
 
 
 21
 We have not overlooked the fact that the bank is not a beneficiary under the will so that a money judgment against it alone would not necessarily require upsetting the probate proceedings. But this circumstance does not alter our result. Quite aside from the obvious inequity which would result if we were to hold that the scrivener of the will could be liable when the beneficiaries under it could not be, a finding against the bank would be as much of a collateral attack on the probate as that barred by Chancellor Seitz in Anthony v. Harris, 34 Del.Ch. at 166, 100 A.2d at 229. There, the judgment sought by the intervenors, that the will was invalid thus precluding performance of an agreement by the defendant to purchase property devised under it, could have been entered without disturbing the probate proceedings as the intervenors could have been granted adequate relief by a dismissal of the Chancery action.[8] But Chancellor Seitz barred the claim that the will was invalid for he regarded it as a collateral attack on the probate proceedings. Similarly, a judgment against the bank in this case would be a collateral attack as it would be inconsistent with the admission of the will to probate. Thus it is barred.
 
 
 22
 The order of October 2, 1987 will be affirmed.
 
 
 
 [1]
 Moore's complaint and proposed amended complaint are ambiguous with respect to the manner of revocation of Jean Purse's 1979 will. But in her brief she indicates that the 1979 will was "made void by the Will of 1984." Further, in her reply brief she sets forth that it appears that the bank destroyed the original 1979 will "upon the execution of the 1984 will."
 
 
 [2]
 The judge also relied on Del.Code Ann. tit. 12, Sec. 1571 which was repealed before Purse's death. See Criscoe v. Derooy, 384 A.2d 627, 629 (Del.Ch.1978). We do not, however, regard this circumstance as undermining his conclusion
 
 
 [3]
 Our result would not be different even if there had been no prior will and Moore was claiming as an heir at law
 
 
 [4]
 There is no controlling case on the point in Delaware. See Chambers v. Kane, 424 A.2d 311, 315 (Del.Ch.1980), aff'd in part, rev'd in part, 437 A.2d 163 (Del.1981)
 
 
 [5]
 We, of course, make no finding that a statutory review proceeding is time barred as only the Delaware courts could do that. Moore did, after all, bring an action to set aside the will within the time allowed by Delaware law, albeit in the wrong court. See Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 412 A.2d 122 (1980). In this regard we note also that while the record is silent on the point, one or more of Moore's children may be infants though we also observe that the general Delaware statute providing for tolling of infants' actions makes no reference to a proceeding under Del.Code Ann. tit. 12, Sec. 1309(a) (1987). See Del.Code Ann. tit. 10, Sec. 8116 (1975). In the event a state statutory proceeding action is not barred, there is even less reason to allow this action
 
 
 [6]
 Abbott v. Foy is remarkably similar to this case in that there the court held that under a statute permitting "any interested person" to contest the validity of a will, a stepson of the testatrix had standing to challenge the probate of a will made when the testatrix was allegedly of unsound mind and lacking testamentary capacity even though the stepson was not an heir-at-law. The stepson had standing because he was a beneficiary under the decedent's "lost 1966 will with its attached 1971 codicil." The court explained that he had an interest in the estate because if the challenged will was void it could not revoke the prior will
 
 
 [7]
 By this Moore may have meant her attorney received it on that date
 
 
 [8]
 In fact specific performance was denied as the plaintiffs could not convey a good fee simple marketable title