COURT OF CHANCERY
OF THE
STATE OF DELAWARE

MORGAN T. ZURN
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: July 2, 2018
Draft Report: June 20, 2018
Submitted: April 27, 2018

Elle Van Dahlgren, Esquire
Elle Van Dahlgren Law, LLC
20 Montchanin Road, Suite 230
Greenville, DE 19807

David J. Ferry, Jr., Esquire
James Gaspero, Jr., Esquire
Ferry Joseph, P.A.
824 N. Market Street, Suite 1000
Wilmington, DE 19899

    Re:   *IMO Estate of Joan K. Lambeth;*
           *Jack Reedy v. Larry H. Kendall*
           C.A. No. 2017-0918-MTZ

Dear Counsel:

In this estate matter, a surviving husband has petitioned this Court for a spousal elective share of his late wife's estate under 12 *Del. C.* § 906(a). I write to address the executor's motion to dismiss that petition as untimely. For the reasons that follow, I recommend the Court grant the motion and dismiss the husband's petition.

## I.      Background[1]

Joan K. Lambeth ("Lambeth") died on April 26, 2017, leaving a last will and testament dated April 18, 2017.[2]  The will named Respondent Larry H. Kendall ("Kendall") as executor.[3]  Petitioner Jack Reedy ("Reedy") was Lambeth's surviving husband, having married Lambeth on October 30, 2014.[4]  Lambeth's will left approximately $65,000 in cash and personal property to Reedy, and dispersed the nearly $1.2 million worth of remaining assets among other specified beneficiaries, including Kendall.[5]  The will was filed with the Register of Wills on May 10, 2017, and Kendall was appointed personal representative of the estate on May 26.[6]  Reedy filed a petition for a spousal elective share on December 26, 2017:  exactly eight months after Lambeth's death, and exactly seven months after Kendall was appointed personal representative.[7]

Reedy admits that "under normal circumstances," Title 12, Section 906 of the Delaware Code would require him to file his petition within six months of

---

[1] This background is drawn from the pleadings.
[2] Pet. ¶¶ 2-3.
[3] Pet. Ex. A.
[4] Pet. ¶ 1.
[5] Pet. Ex. A.
[6] Pet. ¶¶ 4-5.
[7] *Id.* at 1.

Kendall's November 26 appointment as the personal representative.[8]  Reedy

argues that this deadline should be relaxed in this case.  Reedy alleges:

> Petitioner represents that he relied to his detriment on the assertion by
> respondent in the weeks following the Decedent's passing that the
> estate's attorney confirmed nothing could be done regarding the estate
> until 8 months had passed after Decedent's death.

> This statement reasonably led the Petitioner away from the truth and
> fraudulently concealed from Petitioner necessary truthful facts
> regarding the timeframe in which he could make a claim against the
> estate.

> In addition, Petitioner reasonably relied upon the competence and
> good faith of respondent acting in his fiduciary capacity and
> understood respondent's statement to mean that he had 8 months to
> make any claims he had relating to the estate.[9]

Reedy makes no other allegations regarding the context of this interaction,

nor about the specific statements Kendall allegedly made.  Kendall filed a motion

to dismiss on February 14, 2018, which the parties fully briefed.  The matter was

submitted for my consideration on April 27, 2018.  I issued a draft report on June

20, 2018.  No party took exception.  This is my final report.

## II.    Analysis

Kendall argues that Reedy's petition for a spousal elective share should be

dismissed because it is untimely and thus fails to state a claim under Court of

---

[8] *Id.* at ¶ 7.
[9] *Id.* at ¶¶ 9-11.

Chancery Rule 12(b)(6).[10]  When considering his motion, I accept all well-pleaded allegations in the petition as true, and draw all reasonable inferences in Reedy's favor.[11]  In Delaware, such a motion is granted if a plaintiff could not recover under any "reasonably conceivable set of circumstances susceptible of proof."[12]  Though Reedy admits the petition was filed late, he seeks an extension.  He argues that Section 906(a)'s deadline should not be interpreted strictly and that equity requires the statute of limitations be tolled.

### A. The Deadlines for Seeking an Elective Share and an Extension for Same Are Strictly Enforced.

Title 12, Section 906(a) of the Delaware Code allows a surviving spouse to file a petition for an elective share of his deceased spouse's elective estate within six months of the appointment of an administrator.[13]  If the Court sees fit, and for cause shown, this deadline can be extended if such a request is made within that same statutory period.[14]  This right to elect against a will is a statutory remedy that must be exercised within the time allotted by the statute, "otherwise, that right is

---

[10] Ct. Ch. R. 12(b)(6).
[11] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).
[12] *Id.*
[13] 12 *Del. C.* § 906(a) ("The surviving spouse may elect to take an elective share in the elective estate by filing in the Court of Chancery and mailing or delivering to the personal representative a petition for the elective share within 6 months after the grant of letters testamentary or of administration.  The Court, upon petition, may extend the time for election as it sees fit for cause shown by the surviving spouse before the time for election has expired.").
[14] *Id.*

lost."[15] Section 906 limits the Court's discretion to grant extensions: the Court may not grant extensions after the original six months has elapsed.[16]

This Court has historically applied Section 906's deadlines strictly. In *In re Estate of Mauthe*, the surviving husband filed a late petition for an elective share under 12 *Del. C.* § 906(a).[17] His 12 *Del. C.* § 2308(b) petition for spousal allowance was also filed late.[18] The Court construed the language of both statutes narrowly, holding, "none of these deadlines has been observed, and accordingly no request for these benefits may now be entertained."[19] The Court also dismissed a late petition for an elective share in *In re Estate of Ren Xiong Zheng*, over the petitioner's explanation that she lived apart from her husband and was not timely informed of his death or the appointment of a personal representative, and over the petitioner's allegation that she did not pursue an elective share more promptly because she thought she had reached a settlement.[20] In *Matter of Estate of Atmore*, the Court noted succinctly that a right to take the spousal elective share "*must* be

---

[15] *In re Estate of Tinley*, 2002 WL 31112197, at *1 (Del. Ch. Sept. 11, 2002); *see Johnson v. Hockessin Tractor, Inc.*, 420 A.2d 154, 158 (Del. 1980) ("Not only is it completely logical that a statutory remedy have its period of limitation governed by the limitation provision of the Statute that created the remedy, but we also find it consistent with legislative intent.")

[16] 12 *Del. C.* § 906(a).

[17] *In re Estate of Mauthe*, 1996 WL 307443, at *1 (Del. Ch. June 5, 1996).

[18] *Id.*

[19] *Id.*

[20] 2012 WL 2361949, at *1-2 (Del. Ch. May 8, 2012).

exercised within six months after the granting of letters by notification to the Register of Wills."[21]

More generally, in the context of estate matters, this Court applies deadlines strictly.[22] These deadlines serve the important purpose of facilitating the "prompt and orderly administration of estates."[23] The legislature has given surviving spouses six months to choose to either take under the will or take the elective share.[24] Because surviving spouses stand in the front of the line of claimants, that choice must be made within some circumscribed period so that the rest of the estate's beneficiaries and creditors may proceed based on the remaining assets. Without a timely resolution of spousal claims, the rest of the world must wait to learn what assets are left in the estate—all while a strict non-claim statute looms for the estate's other creditors.[25]

I conclude I cannot read Section 906 leniently, as Reedy requests. Its language creating the statutory right to an elective share clearly requires a petition, or a request for an extension, to be brought within six months of the grant of

---

[21] 1994 WL 374312, at *3 (Del. Ch. June 6, 1994) (emphasis added).
[22] *See, e.g.*, *Cummings v. Estate of Lewis*, 2013 WL 2987903, at *4 (Del. Ch. June 17, 2013) (holding that 12 *Del. C.* § 2102's "non-claim" provision forever bars an untimely claim, and citing cases); *Mauthe*, 1996 WL 307443 at *1 (denying a Section 1309(a) challenge to a will as untimely); *In re Rich*, 2004 WL 1366978 (Del. Ch. June 15, 2004) (dismissing a Section 1309(a) petition for missing the statutory deadline).
[23] *Criscoe v. Derooy*, 384 A.2d 627, 629 (Del. Ch. 1978).
[24] *Tinley*, 2002 WL 31112197 at *2.
[25] *See Cummings*, 2013 WL 2987903 at *4.

letters. This Court has repeatedly applied the deadlines for that statutory right strictly. I must do the same.

### B. Reedy Cannot Prevail on Theories of Fraudulent Concealment or Equitable Tolling.

While Reedy admits his petition is untimely, he asserts that "equity requires that the 6-month limitation be extended to 8 months."[26] Specifically, Reedy argues Section 906's statutory deadline should be tolled under the doctrines of fraudulent concealment and equitable tolling based on Kendall's alleged statement to the effect that "nothing could be done regarding the estate until 8 months had passed after Decedent's death." I conclude these tolling doctrines sourced in equity are not available to Reedy.

In *Tinley*, this Court indicated that Section 906's deadline may be a statute of repose, rather than a statute of limitations.[27] Statutes of repose extinguish or terminate both the statutory right at issue and this Court's subject matter jurisdiction.[28] This Court and the United States Supreme Court have explained that statutes of repose are not subject to tolling doctrines sourced in equity.[29]

---

[26] Pet. ¶ 8.

[27] 2002 WL 31112197 at *1.

[28] *Cheswold Volunteer Fire Co. v. Lambertson Constr. Co.*, 489 A.2d 413, 421 (Del. 1984).

[29] *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2050 (2017); *Whelen v. Simon Sec., Inc.*, 2001 WL 1641250, at *9 (Del. Ch. Dec. 10, 2011) ("I find it unnecessary to decide the question whether or not § 7330(a) is a statute of repose or, instead, is susceptible to principles of equitable tolling."); *see also Fields v. Kent Cty.*, 2006 WL 345014, at *5 n.41 (Del. Ch. 2006) (citing federal authorities).

Specifically, "[t]he purpose and effect of a statute of repose … is to override customary tolling rules arising from the equitable powers of courts."[30] "And the object of a statute of repose, to grant complete peace …, supersedes the application of a tolling rule based in equity."[31]

As explained above, the object of Section 906 is to grant complete peace in the administration of an estate with regard to whether a spouse will take her elective share, thus allowing the rest of the beneficiaries and creditors to proceed with certainty and speed. Treating Section 906 as a statute of repose, as *Tinley* suggests, furthers this purpose. The holding in *ANZ Securities* teaches us that statutes of repose are unaffected by tolling doctrines sourced in equity, such as those on which Reedy relies.[32] I am not convinced that Section 906's deadlines can be tolled by doctrines sourced in equity.[33]

Assuming the period for petitioning for an elective share can be tolled by a tolling doctrine sourced in equity, Reedy fails to plead any such doctrine. Delaware law provides three ways to toll a statute of limitations when the underlying facts of a claim are "so hidden that a reasonable plaintiff could not

---

[30] *ANZ Sec.*, 137 S. Ct. at 2051.

[31] *Id.* at 2052.

[32] *Id*. at 2051-52.

[33] This is not to say that Reedy could not have sought and obtained an extension during the time allotted in Section 906 based on the theories he advances here. I conclude only that once a statute of repose has expired, tolling doctrines sourced in equity are unavailable.

timely discover them:"[34] (1) fraudulent concealment, (2) an inherently unknowable injury, (3) and equitable tolling.[35] Reedy bears the burden of pleading facts supporting the applicability of these tolling doctrines.[36]

Fraudulent concealment requires that a plaintiff prove an affirmative misrepresentation or concealment of facts by a fiduciary, intended to "put a plaintiff off the trail of inquiry."[37] Reedy's petition does not establish a reasonably conceivable basis for finding fraudulent concealment. Reedy pled that Kendall asserted in the weeks following Lambeth's passing that the estate's attorney confirmed "nothing could be done regarding the estate until 8 months had passed."[38] This allegation invites several possible interpretations.[39] Construing it most favorably to Reedy, I infer it to mean that Kendall told Reedy that, according to the estate's attorney, Reedy could do nothing regarding his spousal elective

---

[34] *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999).

[35] *Seiden v. Kaneko*, 2015 WL 7289338, at *8 (Del. Ch. Nov. 3, 2015).

[36] *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 525 (Del. Ch. 2005).

[37] *Ryan v. Gifford*, 918 A.2d 341, 360 (Del. Ch. 2007).

[38] Pet. ¶ 9.

[39] For example, the estate's attorney could have told Kendall that creditors could make no claims for eight months, and/or that the executor could make no distributions for eight months. In this case, the person who could do "nothing," and what that person would otherwise be doing, are critical but unspecified aspects of Reedy's allegation.

share until eight months had passed.[40]  But this inference alone fails to establish a reasonably conceivable basis for finding fraudulent concealment.

Claims of fraudulent concealment are subject to a heightened pleading standard and must be "stated with particularity."[41]  To satisfy the particularity requirement, the petition must allege "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations."[42]  Here, Reedy made no such particular allegations.  Reedy did not specifically allege what Kendall said, when Kendall said it, or to whom Kendall said it.  Though Reedy's brief implies Kendall made the statement to protect his inheritance and those of his family members from being diminished by the spousal elective share, the *petition* does not allege what Kendall intended to gain.[43]  Reedy failed to plead fraudulent concealment with sufficient particularity.

---

[40] Even this interpretation may be generous.  Paragraph 11 of the petition alleges that Reedy "understood respondent's statement to mean that he had 8 months to make any claims he had relating to the estate."  Pet. ¶ 11.  Reedy's purported belief that he had to act *within* an eight-month window seems to be at odds with Kendall's alleged statement that nothing could be done until *after* eight months had passed.

[41] Ct. Ch. R. 9(b); *see also Boeing Co. v. Schrontz*, 1992 WL 81228, at *3 (Del. Ch. Apr. 20, 1992) ("The allegations of fraudulent concealment necessary to toll the statute of limitations must be set forth with the particularity required by Chancery Court Rule 9(b).").

[42] *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) (internal citations omitted).

[43] *Compare* Pet. Br. 13 *with* Pet. ¶¶ 1-16.

Similar deficiencies doom Reedy's assertion of equitable tolling. Equitable tolling requires proof that the underlying facts of a claim be "so hidden that a reasonable plaintiff could not timely discover them."[44] It applies to "claims of wrongful self-dealing … where a plaintiff reasonably relies on the competence and good faith of a fiduciary."[45] To avoid dismissal, Reedy must plead facts asserting when he learned of the statement, when he had notice that it was possibly false, and the reasonable steps he took to protect his rights.[46] The petition fails to allege when Reedy learned the statement was possibly false and what reasonable steps he took to protect himself.

Finally, even if Reedy had pled sufficient facts to establish fraudulent concealment or equitable tolling, he still could not prevail under either theory. When a statute of limitations is tolled using these theories, it is tolled "*only until the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury.*"[47] Though Reedy did not file his petition until a month after the deadline had run, his rights were discoverable long before that. Lambeth's will was filed on May 10, at which point Reedy (and any other member of the public)

---

[44] *In re Dean Witter*, 1998 WL 442456 at *5.
[45] *Weiss v. Swanson*, 948 A.2d 433, 451 (Del. Ch. 2008).
[46] *See Buerger v. Apfel*, 2012 WL 893163, at *4 (Del. Ch. Mar. 15, 2012) (dismissing time-barred complaint even though equitable tolling was "reasonably conceivable" because plaintiff did not meet the pleading requirements) (internal citations omitted).
[47] *In re Dean Witter*, 1998 WL 442456 at *6 (emphasis in original).

could read it and learn its terms and Reedy's share.[48]  In his brief, Reedy places great emphasis on the value of Lambeth's estate, as well as his concern about his gift being significantly smaller than those of Kendall and Kendall's immediate family.[49]  Since this matter was of such apparent importance, it would have been reasonably diligent to contact an attorney immediately.  There is no allegation that Kendall prevented Reedy from reading his wife's will or speaking to counsel.  Had Reedy taken these simple steps, he would have learned of his statutory rights in sufficient time to exercise them.

### III.    Conclusion

For the reasons stated above, I recommend the Court grant Kendall's motion and dismiss Reedy's petition.  This is a final report pursuant to Court of Chancery Rule 144.

Respectfully,

*/s/ Morgan T. Zurn*

Master in Chancery

---

[48] Pet. ¶ 4.
[49] Pet.'s Br. 12.